UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUCY HANCOCK, *et al.,* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-3888 |
| | § | |
| BARRON BUILDERS & MANAGEMENT CO., INC., | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are defendant Barron Builders & Management Company, Inc.'s ("BBMC") motion for summary judgment as to plaintiff Lucy Hancock (Dkt. 29), motion for summary judgment as to all plaintiffs (Dkt. 31), and motion to strike the declaration of Lucy Hancock (Dkt. 35). Having considered the parties' pleadings and arguments, the summary judgment evidence, and the applicable law, the court is of the opinion that BBMC's motion for summary judgment as to all plaintiffs be GRANTED. Consequently, BBMC's motion for summary judgment as to plaintiff Lucy Hancock and motion to strike the declaration of Lucy Hancock are DENIED as moot.[1]

**BACKGROUND**

Plaintiffs Lucy Hancock, Betty Hitzfeld, and Lisa Mooney allege that during a period of three to six months, starting in August 2005, they were subjected to repeated sexual harassment by BBMC's president and owner Barron Rush. Plaintiffs allege that Rush's conduct created a hostile

---

1  In its motion for summary judgment as to plaintiff Lucy Hancock, BBMC urges the court that Hancock is without standing to sue because she was not employed by BBMC at the time of the alleged harassment. For reasons further explained, the court finds that the alleged harassment is insufficient to establish a genuine issue of material fact as to BBMC's Title VII liability. Therefore, for the purpose of BBMC's motion for summary judgment as to all plaintiffs, the court will assume that Hancock has standing.

work environment. Hitzfeld and Mooney claim that they were constructively discharged because Rush's harassment forced them to resign. Hancock alleges that she was terminated by Rush.[2] In December 2006, plaintiffs filed the current action. Consequently, BBMC moved for summary judgment.

## STANDARD OF REVIEW

Summary judgment should be granted if the record, taken as a whole, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *N.Y. Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the moving party meets this burden, however, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may

---

2  *See infra* note 3.

not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996). The court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir.1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S. Ct. 2505 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## ANALYSIS

### Hostile Work Environment

Plaintiffs assert a claim for discriminatory conduct in violation of Title VII based on the hostile work environment theory. Dkt. 1. To establish a *prima facie* case of hostile work environment, an employee must show that (1) she belongs to a protected group, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affected a term, condition, or privilege of her employment, and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Harvill v.*

*Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (citing *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001)). The employee need only establish the first four *prima facie* elements, however, where the harassment was allegedly committed by a supervisor with immediate (or successively higher) authority over the employee–victim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Hence, an employer is vicariously liable for the supervisor's conduct if the employee makes the four-part *prima facie* showing of harassment by a supervisor. *Id.*

Hancock alleges that during the time period between August 2005 and October 2005, Rush "made, in person, numerous sexually graphic, vulgar and offensive statements directed toward [her] . . . on an at least weekly basis, sometimes several times each week." Dkt. 33, Ex. A. Specifically, Rush:

- described the use of sex toys and demonstrated which sexual positions he preferred;
- discussed the sexual relations he had with his wife, often referring to her in demeaning terms;
- talked about videotaping his sexual encounters;
- talked about the number of sex partners he had and the occasions on which he had sex;
- graphically described situations in which he date-raped women in college;
- once, asked for an opinion on Hispanics as sex partners;
- requested that Hancock come to his house in a bikini; and,
- once, entered Hancock's office and began to disrobe by taking off his shirt.

*Id.*

Hitzfeld alleges that during the time period between August 2005 and February 2006, Rush "made, in person, numerous sexually graphic, vulgar and offensive statements directed toward [her] . . . on an at least weekly basis, sometimes several times each week." Dkt. 33, Ex. B. Hitzfeld estimates that Rush "made at least 100 sexually, [sic] graphic, vulgar and offensive statements between August 2005 and April 2006." *Id.* Specifically, Rush:

4

- described and demonstrated which sexual positions he preferred;
- discussed the sexual relations he had with his wife, often referring to her in demeaning terms;
- talked about the number of sex partners he had and the occasions on which he had sex; and,
- asked for money to use at an exotic dancing establishment.

*Id.*

Mooney alleges that during the time period between August 2005 and November 2005, Rush "made, in person, numerous sexually graphic, vulgar and offensive statements directed toward [her] . . . on an at least weekly basis, sometimes several times each week." Dkt. 33, Ex. C. Specifically, Rush:

- described the use of sex toys and demonstrated which sexual positions he preferred;
- discussed the sexual relations he had with his wife, often referring to her in demeaning terms;
- talked about videotaping his sexual encounters;
- talked about the number of sex partners he had and the occasions on which he had sex; and,
- graphically described situations in which he date-raped women in college.

*Id.*

Plaintiffs' evidence, if taken as true, establishes the first three elements of their *prima facie* case based on hostile work environment. Plaintiffs are women alleging that they were victims of unwelcome harassment based on sex. However, plaintiffs fail to provide sufficient proof to show that due to the alleged harassment, a term, condition, or privilege of employment had been affected.

In determining whether alleged harassment affects a term, condition, or privilege of employment, a court will consider the totality of the circumstances, considering factors such as (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether the discriminatory conduct is physically threatening or humiliating, or merely an offensive utterance, and (4) whether the

discriminatory conduct unreasonably interferes with an employee's work performance. *Hockman v. Westward Commc'ns, L.L.C.*, 407 F.3d 317, 325-26 (5th Cir. 2004) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993)); *see also Ramsey*, 286 F.3d at 268 (citing *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)). The plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable. *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (citing *Harris*, 510 U.S. at 21). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998) (internal citations omitted). Occasional comments, discourtesy, rudeness, or isolated incidents, unless extremely serious, are insufficient to establish severe or pervasive harassment. *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999). "[T]he mere utterance of an epithet which engenders offensive feelings in an employee is insufficient, without more, to support Title VII liability." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996) (quoting *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 595 (5th Cir. 1995) (internal quotation marks omitted)). Rather, the harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (quoting *Ramsey*, 286 F.3d at 268). Furthermore, "'implicit or explicit in the sexual content [of the harassment] [must be] the message that the plaintiff is incompetent because of her sex.'" *Hockman*, 407 F.3d at 326.

"[S]exual harassment is discrimination based on sex, not merely workplace behavior with sexual overtones." *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 267-68 (5th Cir. 1998) (noting the common emphasis of the voluminous scholarship on sexual harassment law and the hostile work

environment theory under Title VII). "[W]orkplace harassment . . . is [not] automatically discrimination because of sex merely because the words used have sexual content or connotations. 'The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Oncale*, 523 U.S. at 80 (quoting *Harris*, 510 U.S. at 25). Title VII is intended only to prohibit and prevent conduct "that is so severe [or] pervasive that it destroys a protected class member's opportunity to succeed in the workplace." *Shepherd*, 168 F.3d at 874.

Having reviewed all of the relevant circumstances, including the frequency of the conduct, its severity, whether the conduct was physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance, the court determines that under the applicable law, plaintiffs have failed to raise a genuine issue of material fact that the alleged sexual harassment of which they complain was "sufficiently severe or pervasive to alter the conditions of [their] employment and create[d] an abusive working environment." *See Harris*, 510 U.S. at 21 (internal quotation marks and citations omitted). In *Hockman v. Westward Communications, L.L.C.*, the Fifth Circuit reviewed allegations that during an eighteen month time period, the plaintiff's supervisor once remarked about another employee's body, once slapped plaintiff on the behind with a newspaper, "grabbed or brushed" against plaintiff's breasts and behind, once held plaintiff's cheeks and tried to kiss her, asked plaintiff to come to the office early so that they could be alone, and once stood in the door of the bathroom while plaintiff was washing her hands. *Hockman*, 407 F.3d at 328. After considering the totality of the circumstances, the Fifth Circuit court affirmed the district court's finding that the harassment alleged was not so severe or pervasive as to affect a term, condition or privilege of employment. *Id.* at 329.

In affirming the lower court, the *Hockman* court examined a case concerning more egregious circumstances. In *Shepherd v. Comptroller of Public Accounts*, the plaintiff testified that her coworker told her, "your elbows are the same color as your nipples," and "you have big thighs" while he simulated looking under the plaintiff's dress. *Shepherd*, 168 F.3d at 872. Furthermore, the coworker stood over the plaintiff's desk on several occasions and tried to look down her clothing. *Id.* The coworker also "touched [plaintiff's] arm on several occasions, rubbing one of his hands from her shoulder down to her wrist while standing beside her." *Id.* Finally, on two occasions, after coming in late to an office meeting, the coworker "patted his lap and remarked, 'here's your seat.'" *Id.* Nevertheless, the Fifth Circuit court found the alleged harassment insufficiently severe or pervasive and affirmed the district court's grant of summary judgment. *Id.* at 875.

Similarly, plaintiffs' allegations of harassment by Rush are insufficient. Plaintiffs claim that Rush acted inappropriately at least on a weekly basis. Dkt. 33, Ex. A-C. Hitzfeld, for example, testified that Rush made over 100 sexually graphic, vulgar and offensive statements during a nine month period. Assuming that the allegations are true, Rush frequently discussed his personal sex life with the plaintiffs. Without question, Rush's remarks concerning his sex life were boorish and offensive. But, they were not so severe or pervasive as to effect a term, condition, or privilege of the plaintiffs' employment. Rush's remarks were not physically threatening or humiliating. Rather, these offhanded comments were mere offensive utterances. In addition, Rush allegedly invited Hancock to his house, instructing her to wear a bikini. On one other occasion, Rush entered Hancock's office and began to unbutton his shirt. Rush's conduct, while offensive and unwelcome, falls short of creating an objectively hostile or abusive working environment as established by Fifth Circuit precedent. *See Hockman*, 407 F.3d at 328 ("Rogers's remarks to Hockman about Ledesma's

body and requests to be alone with Hockman are offhand comments that are boorish and offensive, but not severe. Similarly, the newspaper slap amounts to "simple teasing," which "will not amount to discriminatory changes in the 'terms and conditions of employment.'" The attempted kiss and bathroom incident were isolated incidents that were not serious." (quoting *Faragher*, 524 U.S. at 788 (internal citations omitted))).

Title VII is intended only to prohibit and prevent conduct "that is so severe [or] pervasive that it destroys a protected class member's opportunity to succeed in the workplace." *Shepherd*, 168 F.3d at 874. Because Rush's conduct was not sufficiently severe or pervasive, there is no genuine issue of material fact as to the plaintiffs' hostile work environment claims. *See Shepherd*, 168 F.3d at 874.

## Constructive Discharge

Hitzfeld and Mooney assert constructive discharge claims.[3] Dkt. 1. To prove constructive discharge, the evidence must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment claim. *Derouen v. Carquest Auto Parts*, 275 F.3d 42, 42 (5th Cir. 2001) (citing *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)). Because plaintiffs' constructive discharge claims rely on the same evidence as their hostile work environment claims, plaintiffs cannot survive summary judgment on this claim, either. *See id.*

## CONCLUSION

For the foregoing reasons, BBMC's motion for summary judgment as to all plaintiffs is

---

[3] The complaint asserts that all of the plaintiffs resigned due to the hostile work environment created by Rush's conduct. Dkt. 1. In later pleadings, however, Hancock asserts that she was terminated. *See, e.g.*, Dkt. 33, Ex. A. Because, as further discussed, a constructive discharge claim cannot be sustained when the underlying harassment is insufficiently severe or pervasive to create a hostile work environment, the distinction does not effect the court's ruling. Had Hancock met her summary judgment burden as to her hostile work environment claim, the manner in which Hancock's employment relationship ended would determine whether her employer is entitled to assert the *Ellerth/Faragher* affirmative defense. *See Pa. State Police v. Suders*, 542 U.S. 129, 139-40, 124 S. Ct. 2342 (2004).

GRANTED.  BBMC's motion for summary judgment as to plaintiff Lucy Hancock and motion to strike the declaration of Lucy Hancock are DENIED as moot.

Signed at Houston, Texas on November 27, 2007.

_____
Gray H. Miller
United States District Judge